All right. All right. Our final case this morning is the United States against Anthony Bailey to Greenberg. May it please the court Jonathan Greenberg associate federal defender on behalf of the appellant Anthony Bailey. The issue before the court is whether the district judge aired and denying Mr Bailey's motion to suppress and finding probable cause for his warrantless arrest. That question presents 2 facets 1st, whether the video evidence in this case utterly refuted the officer's testimony at the evidentiary hearing, thereby triggering review under the Scott v. Harris standard review. And 2nd, whether the volume of Bailey speech alone justified his arrest for disorderly conduct, notwithstanding the Wisconsin Supreme Court's limitations on that statute as applied to speech. I will begin to the 1st facet getting to the 2nd as time permits. Ordinarily, an appellate attorney standing before this court, arguing credibility is in a very tight spot. This court gives tremendous deference to the trial courts, factual findings, and that deference is at its apex when it comes to credibility and that makes perfect sense. Credibility doesn't turn on just what the witness said, but how it was said things, such as body language, tone and demeanor, which cannot be captured by the dead tree record. But there is an exception as video evidence has proliferated courts are often in the exact same position as the trial court as the finder of fact. When there is a video record of the events in question, and when that video evidence utterly refutes the witness's testimony, courts are liberated from having to rely on the trial court's factual findings. Now, the Scott v Harris exception is a narrow 1, and it is triggered by unambiguity when the evidence is not subject to multiple interpretations. It applies and when reasonable minds can differ. It does not apply. And this court's case law, mostly in the context of section 1983, excessive force claims and 4th Amendment motion to suppress claims really teases that out in a case where you have a 1 second, a 6 second snippet of video where there is no audio, or it's in black and white that does not trigger Scott v. Harris, but in a case such as dockery, where everything is captured on video and you can see what has happened when that video refutes the witness's testimony, the appellate court can rely on it and that is what happened here. Seems to me, Mr Greenberg, your argument would have more traction if we were attempting to contrast the video portion of the fight versus the description. However, once the officer runs up to the back of the car and sees the 2 individuals from that point forward, it's really relatively straightforward videos. And that question kind of sounds in US v. Bender, recent decision of this court, which I believe your honor authored. And in that case, the decision of the court. Yes, the decision of the court. Yes, your honor. In that case, it was a very classic felon in possession situation. The defendant ran from the police during the chase. He threw the firearm and there was a partial video. The video did not capture the toss, but it did capture a bulge and the defendant patting the gun. And the argument on appeal was, well, because the video didn't capture the toss, it was an impossibility. And this court's point was there was actually no problem here because there was no inconsistency. And that's different than this case, because the officer testified both at the hearing and in his report. I saw them fall into the snow. And that's just a physical impossibility on this record, like, you can see both participants in this altercation at length. You see, Mr. Bailey 4 minutes. You see his female companion for at least 1 minute. This court will analyze the video frame by frame on the 1 hand. My opinion of the video doesn't matter. As the magistrate judge said, the video is the best evidence, but he reached the same conclusion that I did. There is no snow, wetness or soil on anybody's clothing and that matters. These people were wearing bright clothing. Mr. Bailey had a yellow sweater. His female companion was dressed in all white. Mr. Greenberg, can I ask you a question? Let me put the question hypothetically. Yes, your honor. Suppose that. Officer said, here's what happened. I got a 911 calls about 1 in the morning. I show up in the neighborhood when I got in my car, heard people arguing. So, I kind of, I did it, ran toward it, all that and he said, yeah, and I saw him fighting. They were fighting right at the, at the back end of a silver SUV. Okay. And then he goes on to describe what was going on with the fight and how the gun got found and all that. And it turns out that the video shows definitively. It's a black SUV and the, and the sergeant says, no, I could swear to this day. It was silver. I can see in my mind. It was silver. He's just dead wrong is the whole account, his whole account of what he saw get thrown out that fat pattern would not trigger Scott be Harris because that discrepancy is immaterial and doesn't utterly refute the broader testimony and the natural pushback at, well, aren't we in the same boat here who cares whether or not these people fell into the snow that has nothing to do with whether or not he saw it. We saw a physical fight where Mr Bailey was actively fighting because if he was fighting, obviously, that's disorderly conduct. And the answer is, this is not a minor point. This is not just gilding the lily impeachment in our system. Usually proceed by showing minor inconsistencies. You rarely you rarely have that Perry Mason moment, because when somebody has proven to be demonstrably wrong. Only wrong about something small. You can't trust them on the bigger things when they're not candid on the small things. You cannot credit them on the big things. And in the courts example, a difference in the color of the car doesn't make it. It doesn't matter who cares. But when the officer has been shown to essentially add flavor that is belied by the record, it calls his entire narrative into question. And for that reason, we submit that the doctrine of Scott be Harris does apply here and the lower court clearly clearly aired and cutting the officer's testimony. I am approaching the end of my time, but to briefly approach the speech issue, even if I have convinced the court on this issue, there is still the matter of the noise under 947 or 1 disorderly conduct includes boisterous and unreasonably loud. Conduct and there was a loud argument here. So, the natural response as well, they were allowed. Therefore, couldn't be officer of arrested him and courts are naturally hesitant to vest such power in the police to arrest anybody just because they are subjectively loud. The Wisconsin Supreme Court has placed very firm guardrails on this statute. It does not reach 1st, American protected conduct. And even for the non speech elements of the non speech elements of conduct, like volume, it has to be objectively unreasonable. And this record does not support that finding. Uh, as the Wisconsin Court of appeals held in Olson, but for probable cause determinations, we don't. Require officers in the field to, um, identify possible 1st, amendment defenses to a disorderly conduct prosecution before they make an arrest. And if that's your whole challenge, you're number 1 misreading the Douglas D case. Dramatically, because that was all about a content based. Issue, um, not because it was, it was a class project of creative writing project in a school where a student wrote an essay about cutting off the teacher's head. Um, and so that it's entirely off off topic, but even setting that aside to the extent that there's. Various 1st, amendment defenses to certain disorderly conduct prosecutions. We don't require officers in the field, making probable cause determinations in arrest situations when they're dealing with. Loud boisterous arguments to sort of parse the nuances of 1st, amendment law, and whether there's going to be a 1st, amendment defense to this disorderly conduct prosecution. That's just not required. I understand the court's point, but the 1st amendment aside, there still has to be showing that this was objectively unreasonably loud as the Supreme Court was not for probable cause. Not for probable cause we don't have, we don't have to have a videotape at a certain decibel level to make that determination and the officer's testimony alone was enough. And the. District accredited it, it's not sufficiency. They, of course, don't have to prove every element of the offense, but there's still some probable cause that it was objectively unreasonably loud. And here we have a fight. That's only audible from 3 houses away. That doesn't suffice unless the court has any further questions. I will reserve the remainder of my time. Thank you. Thank you. May please the courts good morning Taylor cross for the United States. This appeal turns on a narrow question do a few seconds of video footage discredit and officer's testimony that he heard and saw Bailey and a woman fighting. Outside near 1 am in a residential neighborhood utterly discredit. His testimony is the fact that there were previous noise complaints from this party. A, does the officer know that and B, does that affect our analysis? Your honor the record demonstrates that the officer did know there were previous noise complaints, but I submit that does not affect the analysis here. Because as soon as the officer approaches the scene, what matters is the totality of the existing circumstances and the video in every way that it can corroborates the officer's testimony that he 1st. Heard shouting in the distance within seconds after exiting the squad car. There is shouting audible on the videotape. He then breaks into a run and contemporaneously. Advises dispatch that a fight is in progress. Those are the kinds of present sense impressions and contemporaneous observations that are afforded a high amount of trustworthiness under our rules of evidence. And as the officer begins to run towards the house, the camera is jostling so much that you might need a tram at all. So the fight is not picked up. But what is picked up is his commands to Mr Bailey and the woman to knock it off get on the ground. He then grabs Mr Bailey at that point. It is true that Mr Bailey and the woman are visible on this video. But the video shows it is for a brief. Few seconds, and not even their entire bodies are visible on this video. Attorney Greenberg included photographs in his brief, and you can see that's it. Not their entire fronts, not their entire backs. And in fact, the woman was wearing all white. I submit it might be difficult to see white snow on white pants. You also see that the sidewalks and street and driveway of this neighborhood are relatively clear of snow. After Bailey is detained by the officer, the officer continues to make these contemporaneous observations that he's detained the two people involved in the fight. And then he walks Mr Bailey to a squad car and tells him, I saw you fighting. I saw you grab her. And then I saw her hit you. All of this taken together is credits. This officer's testimony, the standard here is. Under Scott versus Harris, United States Supreme Court standard that the video must utterly discredit the officer's testimony here. We don't even get to discredit because the video completely corroborates his testimony. This court most recently addressed video evidence and witness testimony last month in United States versus Bender there. This court said that a video evidence needs to make testimony impossible under the laws of nature in order for a court to reject witness testimony here. There is nothing about the video or. Nothing about the video that renders the officer's testimony that he thought he saw someone fall to the snow physically impossible. I want to turn to attorney Greenberg's 2nd argument on this appeal. And in order to get here, this court must 1st, reject the district court's credibility determination, which. As this court is well aware is afforded the most deference. So, in order to get away from probable cause, which attorney Greenberg concedes probable cause exists here. If you exclude the reasonable, unreasonably loud noise based on the boisterous, abusive fighting, violent conduct that the officer observed in the street. So, the only way for the court to reject probable cause is to undercut the district court's credibility determination. But again, addressing what constitutes unreasonably loud conduct, there is no test. That attorney Greenberg has advanced here that it needs to be conduct that is akin to shouting political speech over a megaphone at 2 am. That is an example used by the Supreme Court of Wisconsin. And an example that demonstrates how this is a fact intensive. Analysis that's done under the totality of the circumstances. So, there is no upper threshold that is posited again and again in the defense briefing. Here, it is unquestionable that the noise was heard when the officer stepped out of the squad car. It got louder as he approached and is heard even over his panting and the sounds of his footsteps. And there's no question here that yelling between 2 people after midnight heard at least half a block away in the middle of a residential neighborhood is the kind of unreasonably loud conduct. The Wisconsin disorderly conduct statute contemplates. With that, your honors, if there are no additional questions, I ask that you affirm because the district court did not air and finding the officer reliable. Incredible. Thank you. Thank you just 3 quick points in rebuttal. As to judge Brandon's question, I don't believe a prior noise complaints are relevant to the analysis of probable causes always particularized to the individual. There is no addition in the record that the prior complaints related to Bailey. So, I don't think that adds anything to the analysis. As to the government's point that the question is a matter of seconds. Again, I respectfully disagree with that. The court will see the video for itself. But you can see both Bailey and his companion for ample time enough time to see their clothing. And finally, as to the officers post arrest statements. It will be 1 thing if those were candid assertions. But officers are well aware that anything they say in a body camera is picked up. And to me, there's not much difference between what he says post incident and his in court testimony without. I respectfully ask the court to reverse. Thank you. Thank you. Our thanks to both counsel. The case is taken under advisement and that concludes our calendar for today. The court is in recess. And again, we thank the University of Wisconsin law school for hosting us this morning. All right.